## Langstaff et al. v. Meyer et al.

June 13, 1947.

Joe L. Price, Judge.

C. H. Lowry for appellants.
Terrell & Schultzman for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

Action was brought by appellees, H. L. Meyer, as trustee, and Mrs. Faith Langstaff, owners of the bonds secured by the property described in the deed of trust, to enforce their lien for the satisfaction of the indebtedness due on the bonds.

The questions presented here involve the deed of trust and bonds executed by George Langstaff, the will of George Langstaff, and the procedure in the court below.

George Langstaff executed and delivered to H. L. Meyer, as trustee, five 6% coupon bonds in the aggregate sum of $10,000, and to secure the payment of them, he simultaneously placed a lien on certain property described in the deed of trust. George Langstaff, the owner of the real estate described in the deed of trust, died testate on the 29th day of July, 1944. The particular portion of his will which is pertinent to this action contains the following:

"I hereby will, devise and bequeath to my daughter, Dorothy Langstaff Helson, the duplex apartment building, known as 714 and 716 Broadway and my home place in which my son, James Langstaff and his family now live, known as 800 Broadway; also a vacant lot lying between said duplex apartment building and my said home place for and during the lifetime of Dorothy Langstaff Helson, and at her death to pass in fee simple to my daughter, Faith Langstaff, should Faith Langstaff then be living; but in the event Faith Langstaff should predecease Dorothy Langstaff Helson, then the property here devised, at the death of Dorothy Langstaff Helson, shall pass under the laws of Descent and Distribution of the State of Kentucky to my heirs-at-law then living."

George Langstaff was survived by five children, all of whom except the plaintiff, Mrs. Faith Langstaff, were joined as defendants. Summons was served on some of them and some of them entered their appearance by filing answers. The defendant, George Q. Langstaff, and his wife, Katherine Iron Langstaff, filed a special demurrer claiming that the children of the defendants, in the light of the will above, were necessary parties to the action. The court overruled this demurrer and entered judgment and order of sale of the property covered by the lien. Two days after the judgment was rendered, appellant, James D. Langstaff and his wife, Adine Corbett Langstaff, filed motion to set aside the judgment and offered special demurrer raising the same question which had been presented by the special demurrer of

George Q. Langstaff and his wife before the entry of judgment. They also offered to file an answer alleging that appellees had not assessed the bonds for taxation purposes. No further orders were taken during that term of court. Sometime within the November term of court appellants' counsel called the court's attention to the fact that the judgment appearing in the order book had not been signed. The appellees immediately filed motion stating the fact that the trial judge failed to sign the judgment in the order book by mistake and oversight and asked the court to sign the judgment "nunc pro tunc." This was done as of the 2nd day of October, 1946. In the meantime, appellees listed the bonds with the Department of Revenue and filed with their reply tax receipts showing the full settlement of the taxes assessed against the bonds for the years 1939 to 1945. The court then overruled the motion to set aside the judgment, and the master commissioner was directed to proceed with the enforcement of the judgment. The questions raised by appellant as to the nunc pro tunc order and procedure herein are not well taken. See Chester v. Graves, 159 Ky. 244, 166 S. W. 998, Ann. Cas. 1915D, 678; Leming v. Farmers' National Bank, 233 Ky. 438, 25 S. W. 2d 1020, and the more recent case of Hundley v. Hundley, 303 Ky. 658, 198 S. W. 2d 971.

The argument that their offered answer alleging failure to list the bonds for taxation purposes was a complete bar to the action cannot be successfully maintained. The requirement that taxes be paid on notes and bonds is a tax measure. In the case of Miller v. Tennessee Chemical Co., 251 Ky. 30, 64 S. W. 2d 437, 438, it was said:

"The plain purpose of the statute, read as a whole, is to secure the collection of the taxes by the commonwealth. The provision that the holder of the note 'may at any time pay all taxes,' etc., was clearly so meant, and cannot be restricted by the court, and therefore the listing of the note by W. J. Miller after the issue was made in this case was within the statute."

See also De Busk v. Perkins, 207 Ky. 556, 269 S. W. 716.

To take any other view would be the equivalent of saying that the statute was written to afford protection

to the defendants. This is not the case. The statute, KRS 132.230, was provided to enforce collection of taxes by requiring the holder to perform a duty which he was already obligated to perform. The listing and payment of the taxes by plaintiffs below deprived the defendants of this offered defense.

The serious question herein is that raised by the special demurrer, namely, as to whether or not the children of the defendants, who were the grandchildren of the testator, were necessary parties to this action. If they were, the court below should have sustained the special demurrer of George Q. Langstaff and wife, and having failed to do that, should have sustained the motion to vacate the judgment and then have permitted the filing of the special demurrer of James D. Langstaff and wife.

Appellants take the position that the will of George Langstaff, Sr., needs no interpretation or construction, but admit the difficulty presented in that there may be remaindermen as yet unborn.

Appellees take the position that in order to determine who are the necessary parties to the action it will require the court to construe the provisions of that portion of the will above. Under this portion of the will title vests in Dorothy Helson for life, then in Faith Langstaff if Dorothy Helson dies first, but in the event Faith Langstaff should predecease Dorothy Langstaff Helson, then it shall pass under the laws of descent and distribution to the heirs-at-law of George Langstaff, Sr., then living at the death of Dorothy Langstaff Helson. The language, "then the property here devised, at the death of Dorothy Langstaff Helson, shall pass under the laws of Descent and Distribution of the State of Kentucky to my heirs-at-law then living," creates the difficulty. There seems to be no escape from the interpretation that the remaindermen, in the event Faith Langstaff predeceased Dorothy Langstaff Helson, whether now in being or not, would be the heirs-at-law of George Langstaff, Sr., who were living at the time of the death of Dorothy Langstaff Helson. See Vandyke v. Vandyke, 223 Ky. 49, 2 S. W. 2d 1057. The frankness of appellees in this matter is well stated in their brief as follows:

"As reluctant as we are to express a conclusion which may adversely affect the interests of all the devisees, we construe the will to mean that the second contingent remaindermen are those persons who, in the event Faith Langstaff should predecease the life tenant, would be entitled by law to inherit the property as the testator's heirs-at-law at the time of the death of the life tenant, a class of persons who cannot now be ascertained."

But they take the position that contingent remaindermen are not necessary parties to the action and cite in support thereof the case of Goff v. Renick, 156 Ky. 588, 161 S. W. 983, and other cases. However, it will be noted that these were actions for sale of land for reinvestment. It is obvious why a contingent remainderman would not be a necessary party to an action in a sale for reinvestment. It cannot be argued that the mortgagee herein must be required to stand by and wait to see whether or not Faith Langstaff survives Dorothy Langstaff Helson, or for a sequence of events to determine as to whom the remaindermen shall be, and it is equally obvious that a mortgagor cannot mortgage property and then by the terms of a will postpone indefinitely the time for the enforcement of a lien, or take from a mortgagee the right of foreclosure. But it is also highly important that the purchaser at a sale obtain good title to the property. In order so to do all necessary parties must be brought before the court. These grandchildren are possible contingent remaindermen. Thus, it is seen that it cannot be known nor ascertained who will take the property until termination of the life estate. It must then be determined who are the necessary parties in this action. In Jailette et al. v. Bell et al., 110 S. W. 298, 299, 33 Ky. Law Rep. 159, a somewhat similar situation, with its accompanying question was presented. We said:

"The next question to be determined is whether or not the children of Lucy Van Dalsem were necessary parties in the action to enforce the lien. In the recent case of Whallen, etc., v. Kellner, etc., (104 S. W. 1018, 31 Ky. Law Rep. 1285), supra, the rule applicable to such cases is thus stated: 'It is sufficient in such cases if there is before the court the life tenants, or those having vested interests, whose duty and interest it would be to

defend the action, if necessary, to protect the estate; their interests and the remaindermen's being identical. Such contingent interests must in such state of case be represented by the life tenant, or tenant of the estate in possession, who is deemed the representative in estate of tho'se contingently entitled, whether born or not, as otherwise it would be impossible to ever bring them all before the court during the existence of the life estates. So long as the life tenant lived, it could not be ascertained with any legal certainty who would be the one entitled to take at the period of distribution.' To the same effect is the case of Hermann v. Parsons, etc., 117 Ky. 239, 78 S. W. 125.''

Again in Davie's Ex'r v. City of Louisville, 171 Ky. 663, 188 S. W. 911, 916, we said:

''This doctrine is upheld also in Fritsch v. Klausing, 13 S. W. 241, 11 Ky. Law Rep. 788, R. A. Robinson's Sons v. Columbia Finance & Trust Co., 44 S. W. 631, 19 Ky. Law Rep. 1771, Whallen v. Kellner, supra, and Park v. Humpich, 47 S. W. 768, 20 Ky. Law Rep. 879. In such states of case, the contingent remaindermen are bound by the representation of the life tenants and vested remaindermen, whose interests in preserving the property are identical and similar to the interests of the contingent remaindermen.''

Again in the same case, as reason for this rule, is found the following:

''In Johnson v. Jacob, (11 Bush 646); Jailette v. Bell, and Hermann v. Parsons, supra, the following was said and approved: 'It has frequently been held that a stranger to the instrument by which contingent limitations upon the title to real property are created may by judgment regularly obtained against the life tenant in possession bar the contingent remaindermen. The reason for this rule is obvious. If such was not the rule, the deed or will of a grantor or testator might so limit the title passed as to leave the holder of an outstanding and paramount title without remedy because of his not being able, until after the happening of some remote event, to ascertain the persons against whom to institute this action.' ''

In the instant case there is a life tenant in possession and only a remainder which is dependent upon and

limited to the happening of an event or condition. Consequently, the contingent remaindermen are represented by and are bound by the representation of the life tenant, who was really the only necessary party defendant, since there are no vested remaindermen.

We reaffirm the rule as laid down in the above cases and hold that these grandchildren were not necessary parties to this action. The special demurrer was properly overruled.

The judgment is affirmed.